In the Matter of WILLIAM A. MORIARTY, Petitioner, against JOHN McKENZIE, as Commissioner of the Department of Marine and Aviation of the City of New York, et al., Respondents.

Supreme Court, Special Term, New York County, May 18, 1945.

*Abraham Wilson* for petitioner.

*Ignatius M. Wilkinson, Corporation Counsel (H. Broadman Epstein* of counsel), for John McKenzie, as Commissioner of the Department of Marine and Aviation of the City of New York, respondent.

*F. R. Serri* for Anthony Federico, respondent.

*Murray Levine* for Rusciano & Son Corp., respondent.

HAMMER, J. This is an application by petitioner under article 78 of the Civil Practice Act for an order requiring respondent McKenzie, as Commissioner of the Department of Marine and Aviation of the City of New York, to correct, redraw and redraft certain contracts awarded to two contractors — A. Federico & Co. and Rusciano & Son Corp. The contracts are for work at the airport project known as the Idlewild Municipal Airport, consisting of 4,557 acres located in Queens County, New York City, at the Nassau County line and fronting on Jamaica Bay. The application asserts the commissioner was required by law in drawing the contracts, which are Nos. 11 and 12, to make provision that certain work called for therein be performed by journeyman plumbers under the direction of licensed plumbers at the rate of wages prevailing in that craft under separate independent contracts for plumbing work. The work in question consists of drains, sewers, and water lines within the boundary lines of the airport project. The plans and specifications underlying the advertisements for bids and proposals for bids referred to the work in contract No. 11 as construction of a portion of the water supply system, and in contract No. 12 as construction of a portion of a sanitary sewer system. The plans show a city water main and a city sewer in a public street or highway upon which the airport project or property abuts and with which the water main and main sewer to be constructed into the project or property are to be connected. The plans also show within the project lines proposed water service pipes with shutoff valves, and house sewer or lateral to be constructed connected respectively to the new water main and main sewer. It is shown that certain buildings and structures are later to be erected and the water and sewage plumbing pipes thereof are to be connected to the said water service and house sewer or lateral. The principal water mains to be laid connected with existing water mains are thirty inches in diameter and the branches are from six to eight inches. The contracts call in the main for excavations, fill and back fill. The

principal water mains are steel, the sections of which when laid by common laborers are riveted at the joints by boilermakers and blacksmiths. The branch mains are cast iron, the sections or lengths of which when placed are lined up by common laborers and the joints are then tightened and made water tight by caulkers by the insertion of oakum and lead. Boilermakers, blacksmiths and caulkers are skilled workers in their respective crafts. Prior to the letting of contracts Nos. 11 and 12 representatives of Journeymen Plumbers Union and Master Plumbers called upon the respondent Commissioner and stated that such sewer and water main and line work which was proposed to be done was plumbing work and should be required by the contracts to be done by journeymen and master plumbers. The commissioner consulted the engineers in his and other New York City departments and arrived at the decision that the work was not required to be done by plumbers but in the past and currently was usually done by laborers and the crafts previously mentioned under the direction of engineers. Petitioner relies upon section 53 and 56 of the General City Law, section 88 of the General Municipal Law, section 299 of the County Law and upon sections C26–1268.0, C26–1204.0, C26–1206.0, C26–1208.0 and 82d9–7.0 of the New York City Administrative Code (L. 1937, ch. 929) and " Regulations for Installing House Sewers and Making Connections to Sewers " promulgated by the President of the Borough of Queens, March 21, 1938. The regulations provide: " 4. The connections to and openings made in sewers and drains must be made by a plumber licensed by the President of the Borough of Queens and the Commissioner of Health and registered in the Bureau of Housing and Buildings in the Borough of Queens, and no other person or persons shall be allowed to do this work."

The General City Law and the County Law in respect of plumbing in and construction of buildings have little application to the City of New York in which such work is governed by the provisions of the Administrative Code and petitioner's reference to the former was for the purpose of reference to analogous provisions of law. Plumbing work, plumbing, plumbing fixtures and plumbing systems are defined by statute.

Section 302 of the County Law contains the following definition:

" § 302. *Definition of plumbing work.*

" The words ' plumbing ' and/or ' plumbing work,' as used in this article, shall be construed to include the installation or repairing of all piping and other fixtures or fittings for the water supply or sewage and waste drainage of a building."

In the Administrative Code of the City of New York we also find definitions which are pertinent:

" § C26–1204.0 *Plumbing.* — The term ' plumbing ' shall mean the installation, repair, replacement and relocation of the pipes, fixtures and other apparatus for bringing in and distributing the water supply, removing liquid and water-carried wastes, removing rain water and other liquid drainage and preventing trap siphonage and back pressure.

" § C26–1205.0 *Plumbing fixture.* — The term ' plumbing fixture ' shall mean a receptacle intended to receive and discharge water or other liquid, or water-carried waste into a drainage system.

" § C26–1206.0 *Plumbing system.* — The term ' plumbing system ', when applied to a structure, shall include the water supply distributing pipes, the fixtures and fixture traps, the soil, waste and vent pipes, the house drain and house sewer and the storm water system, with their devices, appurtenances and connections within the structure and adjacent premises, except that such term shall not include the hot water distribution piping of a hot water heating system or connections between various pieces of apparatus of a boiler plant, engine room machines, air conditioning and refrigerating systems, but such term shall include the primary water supply to any of the excepted systems or equipment and the main drains or wastes from such excepted systems or equipments."

It seems obvious that the sewer mains and water mains laid in an airport project consisting of 4,557 acres could presumably be determined by reasonable minds as not being plumbing, water systems or lines, and drainage of buildings or the connection thereof with a public sewer, private sewer, or an approved sewage disposal plant. Reasonable minds might readily regard the work in question as part of the public sewer system or water system, and that the provisions of the Administrative Code and of the Borough President's Regulations had application to plumbing within the buildings and structures proposed to be erected within the project grounds and the connection thereof with the sewers and water mains being provided under contracts Nos. 11 and 12. It appears clear that the circumstances presented here were such that the commissioner was required to exercise reasonable discretion and that the petitioner has not shown a clear legal right to the mandamus order sought (*Matter of Durr* v. *Paragon Trading Corp.*, 270 N. Y. 464). It may be that some small items of the work are plumbing. But they are so small when compared

with the entire work and so integrated in it as to constitute merely incidental plumbing not separable from the contracts. (*Matter of Birch* v. *Huie,* 169 Misc. 1011, affd. 256 App. Div. 1057, leave to appeal to Court of Appeals denied, 257 App. Div. 806 and 280 N. Y. 850.)

As the petitioner has not shown a clear legal right to the relief sought, and it appears the respondent commissioner reasonably exercised his judgment in a matter where at most discretion was required, it cannot be said that the commissioner acted unjustly, arbitrarily or whimsically. In any event if it could be held petitioner has a strict legal right to any of the relief sought, enforcement in the present instance would work unnecessary hardship and granting such relief would not be in the public interest. (*Matter of Warehousemen's Assn.* v. *Cosgrove,* 241 N. Y. 580.) Motion denied and petition dismissed, with costs. Settle order.